Mr. Justice Smith
delivered the following opinion.
This cause comes before us by appeal from the final decree pronounced in the court of chancery, in which court the appellee, Starke, filed his bill to obtain satisfaction of a debt, by the heirs and legatees of Francis Gildart, deceased, which he alleged was ascertained to be due him, upon the settlement of his account as executor of said Gildart’s will, by the judgment of the county and probate court of Adams county.
Starke in his bill alleged that Gildart, his testator, was in his lifetime, indebted to him a large sum of money which remained unpaid at the time of his death; and that after the death of said Gildart his estate became indebted to him for advances made on account of it, and for the debts of said estate which were paid by him, while acting in character of executor, out of his private funds.
He farther stated, that his private account against sidra decedent’s estate and the administration account of himself and Mrs. *451 Sophia Gildart his co-executrix, ■ as made out and stated by Moses Siddell and Thomas H. Prosser, at the joint request of himself and his co-executrix, exhibited a balance in his favor of 7514 dollars, 40 cents: and that this amount so stated, after legal notice having been given, was presented to the probate court for allowance. And that upon presentation of his account to the court, it was excepted to on the part of the heirs and legatees of said Gildart, deceased, and by ah order of the court was referred to commissioners, for examination and settlement. And by reference to exhibit (B), made part of the bill, it appears that after several interlocutory proceedings, the report of the commissioners was presented to the orphans’ court at the June term in 1826, accepted by said court, and' ordered to bo reported to the next county and probate court fór allowance of commissions.
It further appears that Starke’s account was reported for allowance and confirmation by the probate judge to the following term of the. county and probate court; whose judgment was recorded in the words following, to. wit: The final account of Theodore Starke executor and Sophia Gildart executrix of the estate of Francis Gildart, decéased, was presented by the judge of probate, reported to be correct and ordered to be recorded: leaving a balance due Theodore Starke of. eleven thousand eighty-seven dollars sixty-eight cents.
It does not appear by any statement in complainant’s bill, nor by any exhibit on file, in what way the reported balance of the commissioners was increased to the last mentioned amount.- But as the amount was ordered to be reported for allowance of commissions to the county and probate court, it must be inferred that in the balance deemed in fávor of Starke, was included an allowance for his commissions as executor.
The character in which this'account is to be regarded, whether as a stated account between the parties.and subject to exceptions of fault, overcharge and mistake, or as a settled demand raised to the dignity of a judgment debt, by the action of the county and probate court, presents a material question for the consideration of this court; and upon'the light in which it is to be regarded depends the correctness of the proceedings in the chancery'court.
*452 In reference to this subject, two positions are assumed by counsel for the appellants.
1. That if the account has been established by the decision of a court having jurisdiction of the subject matter, upon which it acted, the decretal order of the chancellor directing a “ new account to be taken between the parties” is erroneous and void.
2. That if the account derived no additional validity from the award of Siddell and Prosser, to whom it was referred by Starke and his co-executrix, Mrs. Gildart, in & course of friendly arbitration, or from the proceedings of the county and probate court; as the appellee sought satisfactien for a demand, which he treated in his bill as one fixed in its character, and ascertained by the judgment of a court of competent jurisdiction; the decree to account was improperly made, and that the relief afforded was inconsistent with the prayer of the bill.
If the first of these grounds be tenable, an inquiry into the second may become unnecessary.
It is not inferable with absolute certainty, in what aspect the account of Starke was regarded by the chancellor; nor is it material, as the character of the account itself must test the correctness of the decision which we are asked to reverse.
It is stated in the bill, and admitted in the answers, that the letters testamentary of Starke and Mrs. Gildart were revoked; but at what time does not appear with certainty. The presumption, however, arises and is not rebutted by any thing on the record, that this revocation took place subsequent to the proceeding in the probate court, as Starke was by that court, at the time, treated as an executor of Gildart’s will.
The objection, that as the connection between Starke as an executor, and the probate court having ceased to exist, his amount or demand against the estate of Gildart, cannot be regarded as an executor’s account, and that, therefore, the probate court could not rightfully entertain jurisdiction either of the person or the account, is, therefore, to be regarded as unfounded in fact, and demanding no investigation by the court.
As it must be taken for granted, that the probate court exercised jurisdiction properly, so far as it regarded the person of the *453 executor, the question, as to the validity of the proceedings in that court, upon the account, must arise upon the character of the items of which it was composed.
There is an account which consists (as it appears by reference to exhibit (B) and the allegations of the bill), of items alleged to be due by the deceased at the time of his death, and of charges which might properly arise - in the discharge of his executorial duties. As to the latter, there can be no doubt that they formed a legitimate subject matter for the action of that court; and as before observed, a part of the balance decreed in favor of Starke was composed of an allowance for commissions. The only remaining question as to this part of the subject is, whether the debt, due by Gildart, at the time of his death, to Starke in his individual character, was a subject of which the county and probate court could take cognisance. Upon this subject I entertain no doubt.
The probate court has full jurisdiction of all testamentary and other matters pertaining to an orphans’ court or probate court. Revised Code, chap. 9, sec. 1. By the same section of this act, it is clothed specifically with authority'to examine and allow th'e accounts of executors, administrators, and guardians. And the county and probate court possessing a supervisory jurisdiction over all of the judicial proceedings of the probate court, its appellate must be commensurate with the original jurisdiction of the latter.
There is no colorable exception to the mode in which the account was presented for the consideration of the probate court, and the judgment of that court, affirming the report of the commissioners was regularly carried before the county and probate court for confirmation.
The jurisdiction, then, of that court depends upon the question whether the debt of a deceased person due the executor or administrator in his individual character, can be properly charged in his general administration account.
By the common law, the executor had an unquestioned right to retain for his individual claim, and by statute he is authorised to do so, provided his demand against the estate of the deceased shall have been allowed by the probate court: and if he have the *454 right to retain, it is to me equally clear that he must have a right to debit the estate with the amount of his individual claim; for it is manifest, that the act of debiting the estate with the amount of the claim is equivalent to a retainer.
When the executor retains, first having his claim allowed — and of this fact in the present case we cannot go beyond the judgment of the court to inquire — he is compelled to show in his administration account that he has done so; and in this case the credit wall appear in favor of the estate, as in the former it will appear against it: but there can be no sensible difference between an application of the funds of the testator by the executor in satisfaction of his own claim, and an allowance of the administration account of the executor, in which is embraced a' charge for his individual debts.
The county and probate court, as I have shown, possessed jurisdiction of the subject matter upon which it acted. It has, therefore, the unquestioned right to decide all questions which arose in the cause; and whether its decision be erroneous or correct, its judgment must be regarded as obligatory by every other court, unless reversed in due course of procedure. 1 Peters’s Rép. 328. It therefore follows that Starke’s account, which"was the subject of jurisdiction in the county and probate courts, has received, by the action of that court, the authoritative stamp of verity and the validity of a judgment debt.
Regarding the account, then, as a debt established by the decision of a court of competent jurisdiction, it could not be subject to attack for alleged mistake or overcharge. But the decretal order of the chancellor directing a new account to be taken between the" parties, with leave to the defendant to surcharge and falsify any portion or the whole of the claim, necessarily divested ‘it of its validity and reduced it to the level of a stated account.
The rule is well settled that an order for a reference is to be founded upon the pleadings and proofs in the cause, and ought not to be made more extensive than the allegations of the parties, and the evidence adduced in support of them. 3 Johns. Chan. Rep. 587. And as the demand of Starke is to be regarded as established *455 by the judgment of the county and probate court, the order for a reference was therefore improper.
It is to be remarked that as the decretal order was made at the instance and for the benefit of the defendants in the court belorv* the charge of error in that proceeding comes with an ill grace from that quarter. The court would, therefore, be disposed to disregard the exception, were it not apparent that the final decree is for an amount greater than the appellee has shown himself entitled to recover.
As this court must reverse the decree for the error which we have pointed out, it is unnecessary'to examine farther into the exceptions which have been insisted on in the argument of this cause.
Mr. Chief Justice Sharkey
delivered the following opinion.
. The view that I take of the case before us, will compel me to examine most of the points made in argument by the counsel for the appellants. The true character of Starke’s account presents the first question, for investigation, as preliminary to the merits of this claim. The bill states, that part of the account was due at the time of Gildart’s death, and that part of it was created after-wards for “ debts paid and moneys advanced for said estate” by Starke, as one of the executors, and that the whole account as stated, was presented to the orphans’ court of Adams county, for allowance as an executor’s account. Exceptions Avere'taken to it by those interested in the estate, and it was referred to auditors with directions to report. The report of the auditors, after several intermediate orders, rvas finally received, and the account amounting to 11,087 dollars 68 cents was allowed..
The orders of the orphans’ court are set out in the exhibits, and if that court had free jurisdiction over the person and the subject matter on which it acted, such action would be conclusive on the parties until reversed by due course of 'proceeding; but it is concluded by counsel that it had not jurisdiction.
The action of a court is not conclusive, unless it is competent for it to adjudicate on the subject matter or person, and Starke’s claim has derived no authenticity from the several orders of the *456 orphans’ court, unless it had jurisdiction. The proceeding, I presume, took place under the provision contained in the 87th sec. of the orphans’ court law, by which the judge of probate is authorised to take, receive, and audit all accounts of executors, administrators and guardians, and after auditing such accounts and causing them to be properly stated, he is required to report them to the next term of the orphans’ court, the executor, administrator or guardian giving notice in the mean time; and if no exception be taken an allowance may be decreed; but if excepted to, the court is to have proof, and correct the mistakes and errors, or refer it to auditors, who are requested to hear the parties and witnesses, restate the account and make report to the court for confirmation and allowance.
The kind of account contemplated by the statute is evidently such as might be created in the course of administration, showing the receipt and disbursement of the funds of the estate. The orphans’ court have jurisdiction for taking the probate of wills, granting letters testamentary and of administration, appointing guardians, and for examining and allowing the accounts of executors, administrators and guardians “ with full jurisdiction in all testamentary matters.” One of the three characters must have attached before the court can in any degree control the action of the person. These are trust characters, derived in two instances by the direct appointment of the court, and in the third perfected under its sanction and authority, and there is, therefore, a superintending and supervising power in the court by which the fiduciary conduct of the individual is to be regulated.
The law requires executors and administrators to perform certain duties in the settlements of estates, and they are to be performed under the jurisdiction of the orphans’ court. The character in which they are to be performed must have attached, before the court can exercise its powers over the individual Starke had been appointed executor, but his authority had been revoked; whether before or after the orders of the court, is not distinctly averred. The account of a mere creditor of an estate does not form a proper subject for the scrutiny of the orphans’ court, nor can it refer such account to auditors, or curtail it so as to bind the claimant. *457 Suppose a creditor were to present his claim to the court, and it were disallowed or rejected — such rejection would, of course, have no weight in a court of law.
There is a provision in the statute which provides for allowing claims against estates, but that is only intended to justify a voluntary payment by the executor or administrator, and if a creditor should think proper to present his claim, the tribunals of the country are still open to him, and he may institute his suit.
Executors and administrators are mere agents appointed by law, and it is proper that they should show how they have discharged the duties required of them, and this he can only do by keeping an account of the amount received by them, and the amount disbursed, and this is what is called by the statute an administrator’s account.. It is this kind of account, and this only, as I conceive, that presents a proper subject for reference to auditors by the orphans’ court.
The term “ allowance,” used in the statute, can mean nothing more than the sanction or approbation which the court gives to. acts of the executor or administrator as manifested by his account.
An executor or administrator who is also a creditor, may retain for his debt, after having his claim allowed by the orphans’ court; but would the court have any right to refer such an account, when presented, to auditors? It is not an administrator’s account within the meaning of the statute, but it is the claim of a mere creditor, who, from his particular situation, has the right to retain. In all other respects, he stands on the same ground with other creditors, and we have seen that the-claims of ordinary creditors cannot be referred. Is the administrator to be placed in a worse situation? for such it would be, if the court can send his claim to commissioners — a power which it cannot exercise with other claims, which are declared by statute to be in no way superior. I apprehend that the allowance spokfen of to justify an executor or administrator in retaining, is just such an allowance as is necessary to justify him in making voluntary payments to others. It is evident, the power to refer his claim is not expressly given, and if it can be exercised, it is only by implication, and that, I think, *458 is doubtful. But certainly, there was not just ground for such • a proceeding, in reference to that part of Starke’s claim, which was due at the time of Gildart’s death, unless Starke was, at the time the order was made, the executor, a fact which does not appear from the record. If he contend for the jurisdiction of the orphans’ court, he should show that it possessed it. The inference that it had jurisdiction will not do, when there is equal reason to infer that it had not, and Starke has admitted that his letters were revoked, and the jurisdiction of the orphans’ court is denied by the answer. If it even were true that his account was a proper subject of reference, he has not shown that he was acting in a character at the time of the reference, which would justify it.
If Starke had placed himself in a condition to retain, he should have charged his individual debt to the estate in his administration account, supported by proper vouchers; but there his account as an individual creditior would have been satisfied, and the nature of the transaction so far changed, as to make it a proper subject for the investigation of the orphans’ court. That, however, was not done, and that part of this account which was due at Gildart's death, remained unsatisfied and unchanged at the time of instituting this suit, and so has presented it to us. So far as the account created after Gildart’s death, in the due course of his executorship, it might, and probably did, form a proper subject for the allowance of the court; but it did not stop there. The two accounts are blended together, and the whole treated as an executor’s account. The account cannot be now separated, and the order of the court applied to that part of it over which it had jurisdiction, but its orders must be good in the whole, or not at all; and as it assumes jurisdiction, which it did not rightfully possess, its orders cannot be regarded as obligatory.
Starke’s claim must, therefore, stand precisely as though the orphans’ court had never acted on it; or at best, the orders of court, and report of the auditors, can be considered in no other light than as circumstances introduced in support of the justice of the demand. So far as his debt existed before the death of Gil-dart, he was a creditor, and so far as it was credited afterwards, if for the benefit of the estate, -his condition is, perhaps, similar to *459 that' of any other creditor under like circumstances, in reference to the estate out of which payment should be made, which will be particularly noticed hereafter.
It has been urged in argument, that this account cannot be a proper subject for equity jurisdiction, inasmuch as the complainant had his remedy at law.
Having divested the account of every thing like a conclusive character, in consequence of the adjudications of the orphans’ court, we are now to consider it as presenting a series of transactions, both debts and credits, for a considerable length of time, and although in that shape it might have been a proper subject for legal remedy, yet it may also be a matter cognisable in a court of equity. It is a principle well settled, that in matters of account, complicated in their nature, courts of law and courts of equity have concurrent jurisdiction. This must be understood, however, as referring more particularly to the action of account at law, which is not now in use, having been superseded by bill in chancery, as a mode better calculated to secure ample justice between parties whose dealings entitle them to this remedy; but it is now applied in all complicated accounts. It is also a rule, that although the party may have his remedy at law, yet if counts of law can-, not give so complete a remedy, equity will entertain jurisdiction. 1 Maddock, 85; 2 Caines’s Cases in Error, 39-53. This cannot be considered as a stated account, so as to make the remedy purely legal. There was no person who could consent to the acts of the auditors, so as to give it that character. But apart from the subject matter of the demand, the situation of the parties was such as to preclude a remedy at law, and this, as well as the subject matter, is in some instances considered as a cause for equity jurisdiction.
If Starke’s claim was good at all, it was a lien on specific property; and yet the holders of that property did not sustain such a relation to him, as to enable him to sue at law. His claim is' made up of a great variety of charges arid credits, which he could best establish by proceeding at once in a court of chancery; added t'o which, there was no time at which he could have enforced his remedy at law.
*460 He was appointed one of the executors, and having accepted the trust he could not have sued his co-executor. He might have retained for the amount of his debt while he continued executor, but it seems that he was prevented from doing so for want of funds, as he had to make advances for the estate instead of taking from it. And the bill expressly charges, that his letters were revoked, and that there was no administrator afterwards appointed. The answer of Sophia Gildart admits the revocation of the letters testamentary which had been granted to herself and complainants, and it does not appear that an administrator de bonis non .was ever appointed. The answer also admits the division of the estate, so that there was no person against whom the appellor could have enforced a legal remedy after he was placed in a situation that would have justified it. Moreover, if Starke had any remedy for that part of the account created in the capacity of executor, it was in equity; and even if that part of the transaction was such, from the peculiar situation of the estate, as would not entitle him to relief, yet if the court had jurisdiction for one purpose, it'would retain the bill for the whole. 10 Johns. Rep. 587. But finally, the parties have all answered the bill, and an objection to jurisdiction comes too late, after answer, on the hearing of the merits. 2 Johns. Chan. Rep. 369.
The ground that I have taken disposes of most of the objections to the account itself, and the several orders in relation to it. There are some points in the assignment of errors relating to the account as a proper charge against the estate, which remain to be considered. It is said that the account was not a proper charge against the estate, because it does not appear to have been presented within .eighteen months, as .the law requires. This objection of course relates to that part of it which was due at the time of Gil-dart’s death. Starke was one of the executors, and it was- unnecessary that he should make a formal presentment to his co-executrix. The object of presentment is to give the executor notice of the existence of the claim, that he may know the amount of debts which he will have to pay; and when due to the executor, might it not with propriety be considered in a state of presentment? But before it is necessary that a claimant against an estate should show *461 that he has made his presentment, it must be made appear affirmatively that notice was given by the executor as the law directs, requiring creditors to present tbeir claims. This does not appear from the proceedings, although it was doubtless done. So far as the account remains to be noticed, it will be considered in investigating the correctness of the decrees._
Having placed the account of Starke, the complainant, in its true light, and shown, as I think, that it presents a proper subject for equity jurisdiction and relief, the interlocutory decree of the chancellor, pursuing a methodical arrangement, will naturally come up next for investigation. It was in substance decreed, that the cause be referred to commissioners and a new account taken; and the commissioners were instructed, 1st, to ascertain the amount due at the time of Gildart’s death, each party to have the benefit. of legal objections to the claims presented, and legal interest to be allowed on the balance. 2. To disallow all commissions. 3. To disallow interest on the advances made for the estate. 4. To receive proof on the part of defendants to surcharge and falsify. 5. To strike a balance on the first of January of receipts and disbursements, and if it should appear on striking any such balance, that the complainant had a surplus, it was to be applied to extinguish the amount due by Gildart, at his death. And 6. To examine on oath either or all of the parties. There are various objections made to this decree. 1. It is said to be error that by it a new account is directed to be taken between the parties, when by the record at large it appears that only one of the defendants ever had any dealings with -the complainant. The dealing or account here alluded to must, I presume, be the account which was created after the death of Gildart. For that part of it .which was due before his death, Starke does not claim relief in consequence of a dealing with any of the parties. His claim, as I understand it, is predicated on that general lien which all creditors have by law, on the property of their deceased debtors. Privity of contract between the immediate párties, cannot be necessary to entitle the claimant to relief; it is the general lien on specific property which entitles him to it. Starke only claims relief against the present defendants in consequence of their being the holders *462 of property on which he has a lien, and in that character he has made them parties to his bill. So far as the account was really 4ue at the time of Gildart’s death, it was a lien by positive enactments on the property which he held, and the disposition of that property by will or otherwise could not remove the lien.
For the purpose of ascertaining how far it was just, and the consequent extent of the lien, the interlocutory decree was made; and it was necessary, because the holders of the property had a right to be heard, and to show, if they could, the mrjustness of the demand. By the answers, they required that Starke should be held to strict proof, and the decree was the very means of effecting what they had desired, and of doing justice to all parties.
It is further assigned as error, and insisted upon in argument, that no decree to take an account should have been made, because the allegations and prayer of the bill did not seek such an investigation. That Starke had treated his account as settled and had demanded a specific sum. The complainant has stated in his bill an indebtedness accruing to him in consequence of various sums due in an account of long continuance, part before and part after the death of Gildart, in which there are many charges and many payments. It is true, so far as the amount is concerned, the bill treats the account as settled, to establish which exhibits are introduced; first, the report of individuals selected for that purpose; and, secondly, the report of the auditors appointed by the orphans’ court, and the confirmation of that report. In this the party has certainly labored under a mistake, if their exhibits were intended to establish a settled account, in supposing that the court had power to make the orders, and that the acts of the auditors under those orders were legal. The account itself is made an exhibit, and although we are compelled to divest it of an adjudicated character, yet it cannot be worse with the reports and allowance than it would have been without them. If they gave no additional force, they have certainly not detracted from its justness.
Starke had a right to adopt the account as settled by the auditors, as the foundation of his claims; or it may be, for any thing that appears, the same account which he presented to the court *463 for allowance, and the same that he has always relied on as containing the items of his claim. Be that as it may, it presents numerous charges and credits created in a course of mutual dealing, such as could not be decided on, in any other way than by reference, and such as courts of chancery have always considered proper for the investigation and "report of a master. 2 Harris. Chan. 136; 2 Johns. Chan. Rep. 171; 1 Madd. Chan. 86.
That the bill does not contain a prayer to account, cannot be a material objection. The complainant has treated his account as settled in amount, and asks for relief generally, and a discovery of the property out of which he seeks satisfaction. The justice of his claim is denied by the answers, and proof required as to the items, several of which are pointed out and made the grounds of specific objections. How else could they be established except before a master or commissioner? The proofs were ample to support an equitable claim, and some of the items, or parts of that claim having been denied, a reference was the necessary consequence, that the particulars of the demand might be established before a decree could be made. And the general prayer ' was sufficient to justify the decree. Because the complainant may have mistaken the true state of his case, it is no reason that he should be deprived of a remedy to which he has shown himself entitled. It is a rule which seems to be well settled by high authority, and it is certainly founded in justice, that, although a' party may mistake the particular relief to Avhich he is entitled, yet if he show a clear case for the. interposition of a court of equity, he will be relieved under the general prayer. 1 Johns. Rep. 558.
I do not think that the decree can in fact be considered as going beyond the foundation laid in the, bill. The bill by a reference to the account, which is made part of it, contains only specific charges, of which payment is demanded by the prayer, and the order of reference cannot be construed as giving any other power, or directing any further investigation than a mere inquiry as to the truth of the specific charges. I think, therefore, that it comes within the rule, that when the charges in the bill are specific, setting out the items of an account, an inquiry is not *464 open beyond the special matters charged. So that in either point of view, I do not think the objection tenable..
The next error' assigned in relation to this decree is, that it directs a new account to be taken, and only extends to the defendants the privilege of surcharging and falsifying the complainant’s old account. This objection must, I think, arise from an erroneous construction of the decree. The commissioner is directed by the decretal order, to receive all legal and competent proof on the part of the defendants to surcharge and falsify any part, or all of the account of complainant. This cannot mean that they should only be allowed to surcharge and falsify the old account; but the-new account which the commissioner was directed to take, was certainly intended as the subject of this part of the order. The. privilege of surcharging and falsifying, is perhaps more strictly applicable to stated accounts, but I think it may also be given without detriment to the decree, when it is to take a new account,, especially in a case like the present, founded on an account containing all the specifications which were sent to the commissioner for investigation, and which he might have adopted as the foundation of his report. If he had done so, it would have been but just that the defendants should have had such a privilege. If we take the meaning of these terms as found in 1 Maddock, 103,1 can see no good reason why an order of this kind should not be. made in every reference, for the purpose of taking an account.
It is said that if “ any of the parties can show an omission for which credit ought to be given, that is a surcharge; or if any thing is inserted that is a wrong charge, he is at liberty to show it, and that is falsification.” Where an account has been stated, if it be erroneous,' liberty will be given to surcharge and falsify, by pointing out the particular errors of law or fact; and as it is only given as a means of correcting errors, why may it not as well be-employed in taking of the account? In this instance, I do not see that there was any use in making such an order, as the rights-of the parties were amply guarded, as I conceive, by the first member of the decree, which allowed to both parties- the benefit of all legal objections to the claims which might be introduced-If they were not so guarded, the privilege of surcharging and *465 falsifying, it seems to me, was proper, as parties are to be held to such objections to a report, as they may make before the commissioners. At all events, I cannot see that this order could have been, or was productive of any injurious consequences, and as it was made solely for the benefit of the defendants, they should be the last persons to complain of it. Under the decree Starke was bound to establish his account by proper and legal testimony, after which he had a right to have it allowed. The defendants then had a right to surcharge and falsify, to do which, legal testimony on their part was also necessary; and if they have not availed themselves of the privilege, it is their own fault, and they cannot now complain'.
The next and only remaining objection to the interlocutory decree is, that the commissioner was directed “ to examine on oath either, or all the parties on interrogations generally, and without limitation.” The decree is not so broad as the exception. It is true that the commissioner was • directed to examine either, or all of the parties on interrogations, but the decree does not say “ without limitation.” Now it was certainly competent for the chancellor to order, that the parties should be examined to some extent; and I apprehend, that the order was not intended to be, more comprehensive than the rules would justify. It is not altogether clear, from the order, whether it was made for the purpose of allowing the respective parties to establish their claim by their own oath, or whether it was intended that the parties should be allowed to examine each other. By the 43d rule,parties are allowed to establish small sums by their own Oatli, and by the 49th rule parties may be examined on interrogations., or viva voce, at the option of the parties. The power to examine parties, is also one of the incidents to a court of equity, in which it differs from a court of law. Such examinations must, however, conform to the settled rules of proceeding. Many of our rules are obviously taken from those laid down by the chancellor in Remsen v. Remsen, 2 Johns. Chan. Rep. 495, as deduced by him from the books. The application of them, is to be confined to proceedings before a master or commissioner, as limitations of his powers in the discharge *466 of the duties required of him. They are by no means conclusive as to the jurisdiction and powers of the court.
The forty-third rule referred to is almost a transcript from one Of the rules in the case referred to, in which the chancellor has only noticed them as rules which ought to prevail in examinations before a master, being established as a course of practice for convenience and despatch. In the same case the power of the court to examine the parties on interrogations to be settled by the master, is distinctly recognised, and so is the principle laid down in elementary writers. For the purpose of establishing accounts, however, it is certainly to be confined within certain limits, and the only reasonable inference that can be drawn from the decree, is, that if the commissioner should find it necessary to resort to. that mode of proof, it should be exercised in obedience to the rule. The rules are intended for the guidance of the commissioners, as well as for the government of the court, and the commissioner is bound to perform his duty as the rules direct; and he is, therefore, bound to know and observe them; and it cannot be expected, nor is it necessary, that every decree to take an account, should contain directions to the commissioner in regard to the mode of proceedings. It is the office of such a decree to settle the principles on which the account is to be taken, and it is left for the rules to direct as to the ceremonies to be observed in the taking of it. Now if the commissioner had proceeded to examine the parties to establish sums greater than the rules of chancery practice would admit, it might have been a just ground for exception; but it does not appear that he did examine either or any of the parties on interrogations or otherwise; and why object to an order which was never exercised, and from which no injustice has arisen? If the commissioner had instituted such an examination of the parties as was not warranted by the rule, the aggrieved party could have taken his exceptions, and the point would then have come fairly lip. But the defendants have taken no such exception, and we cannot infer that the commissioner acted illegally and oppressively under an order which in itself, by a fair construction, conferred no other power than that which was legal and necessary. This disposes of the objections taken to the decretal order, and it *467 will be necessary to notice next, the objections taken to the report of the commissioner made in pursuance of the interlocutory decree.
When the report came in, the counsel for the defendants objected to it before the chancellor, because they had not received ten days’ notice of the time of settling the report. By the rules of the chancery court, the parties in case of a decree to take an account, should have a day assigned them to attend before the commissioners or auditors to the settling of their report; but the 47th rule, under which this objection is taken, does not require that notice shall be served ten days, or any other particular length of time; it merely directs that a day be assigned them. In the absence of any limited period, reasonable notice is all that can be required. The 48th rule requires ten days’ notice to parties of the time and place of the meeting of the commissioners, for the purpose of taking an account; but I cannot construe the preceding rule as requiring any thing more than reasonable notice of the time-of settling the draft. The notice for that purpose was served on counsel on the 26th of December, and the draft was settled on the 4th of January following, which was nine days, and must be considered a reasonable notice, particularly as the counsel resided in the same town that the commissioner did.
This was the only objection made to the report, and it is a well settled rule that parties are to be confined to the objections to the report which were taken before the commissioner, and by him disallowed. Blake’s Chancery, 256; Remsen v. Remsen, 2 Johns. Chan. Rep. 435. So also it is declared by the 47th rule. This rule, I apprehend, is to be understood as applying more particularly to the items contained in the report, such as calculations, charges, allowance of interest, admissibility of testimony, &c., by which the mistake of the commissioner may be corrected. If any mistakes or inaccuracies have occurred in calculations or charges, the parties should have excepted as the rule directs, and not having done so, the objections, on the authority of Delabigarre v. Bush, 2 Johns. Rep. 490, must be considered as waived. The court of errors in the case referred to say, that they could not know the evidence before the master, and it would be improper to go into calculations made by him. It is said in another case, 18 Johns. Rep. 544, “ that no point or question, which, had it *468 been raised in the court below might have been met and obviated, can bo raised in court of errors for the first time.” All objections, however to the report as the foundation of the action, or which are made to it as the ground of the final decree are still open, for it is also a rule that, “ an appeal from a final decree, opens for consideration all prior or interlocutory orders, or decrees, any way connected with the merits of the final decree;” and this court is to make such a decree as the court below ought to have made, not only reversing what is wrong, but decreeing what is right. 17 Johns. Rep. 559; 1 Johns. Chan. Rep. 184. However broad these principles may seem to be, yet I do not think they will warrant an inquiry into the minutiae of the report, which could have been reached by the parties under the 47th rule. We must, therefore, take the report as we find it, and see whether it presents a good foundation for the final decree.
It is entirely probable that I may be compelled, by the present aspect of the case, to pass over objections which would have been sustainable, if they had been taken at the proper time, but which cannot now be remedied. There are very many points raised in this court which give very clear indication that the parties neglected to watch over their interest with that degree of vigilance which is always necessary in legal and equitable proceedings, until they were surprised at a result which they had not anticipated, because they had never taken the pains to investigate the - claim from which it originated; a case not uncommon with those Avho receive property from an ancestor, without knowing the incumbrance to which it is liable. I would not be understood as intending any reflection on the counsel who have been concerned in this case, for in this court at least,'it has been managed with great ability and zeal on both sides.
The commissioner, in obedience to the interlocutory decree, has reported that at the time of the death of Rrancis Gildart, he was indebted to Theodore Starke, in the sum of 5067 dollars, 90 1-2 cents, on which interest is added until the 1st day of January, 1834, making in the whole, the sum of 12,467 dollars, 14 1-2 cents. The decree directed the commissioner to ascertain the amount due at that time, and being ascertained, it is clearly a lien on the property of which Gildart died possessed, by express legislative *469 provision. Revised Code, 42, sec. 52. ' For this part of the claim Starke must be entitled to a decree; but it is said to be error in the final decree, that it gives other relief than against Mrs. Gil-dart, or her representatives, for debts which remained unpaid, she having received all of the property. This position cannot be correct; Mrs. Gildart was entitled to a life estate in the property, and she received the property subject to the lien of creditors, who had a right to be satisfied out of it.' The property was subsequently divided amongst the defendants, and if the relief had been decreed against Mrs. Gildart or her representatives, it would have been a change of the creditor’s lien, from property which his prospect for satisfaction might have been greatly diminished, or perhaps entirely lost. Such a decree would have been manifestly erroneous. Starke can have no right to claim satisfaction out of the property of Mrs. Gildart, which she did not derive from her husband, unless it be in consequence of mal-administration, which is not charged against her. This demand must be satisfied out of the property which was owned by Francis Gildart at the time of his death. The case, as exhibited before us, will not justify, any relief except against that particular property, Starke having predicated his claim solely on the ground of his being a creditor of the estate. ■ •
The commissioner has also reported the amount which became due to Starke after the death of Gildart, and whether this amount is, or is not ’a just charge on the property, is a question, the solution of which is by no means without perplexities. Admitting that under particular circumstances, a debt so created would be a just charge on the property of the deceased, I very much doubt whether this case is so presented as to justify a decree for the amount out of the property of Gildart, in the hands of the defendants. It is a principle which appears to be well settled, according to the English practice, that an executor who pays the debts of his testator out of his own money, will be entitled to compensation out of the assets in his hands, and may retain for the amount if lawfully paid. Toller’s Law of Executors, 238, 239; Wentworth on Executors, 185; 2 Fonblanque, 413.
In making an application of this principle in this country,'seve *470 ral statutory provisions are to be regarded as limiting the operation of this rule. In the first place, an executor or administrator cannot retain for his debt here, without first having his claim allowed by the orphans’ court, .and no such rule prevailed in England that I am aware of. Suppose, then, that an executor were to pay out of his own funds the debts of the deceased, it would not necessarily follow that he could retain for the amount so paid; but his right to retain would depend upon the approbation of the court, in giving which the court would of course require that the executor should have acted according to law. Again — by the 90th section of the orphans’ court law, no executor is permitted to pay any claim against an estate, otherwise than at his own risk, unless it be proven according to the rules therein prescribed, or unless it be first allowed and passed by the orphans’ court. Now if an executor should voluntarily pay claims against the estate, before they are proved or allowed, as the law requires, such payment is expressly declared to be at his own risk, and of course the court would not be justified in allowing his account in which such payments were charged, and in such a case he could not retain.
It is immaterial how just a claim may be against an estate, an executor should not and cannot legally pay it, unless it is brought • within the provisions of the 'statute. This restraint is imposed for the purpose of guarding against spurious claims, and the executor who disregards it must do so at his peril. These two sections of the statute must necessarily tend to qualify the English rules, for in the first place the right to retain does not depend upon the mere description of the executor, even for a debt due him before the death of the testator, and in the next place he would not be allowed to retain for money by him paid after the death of the testator, unless the claims on which'the payments were made, were such as the law authorised him to pay. Then it seems to me that the principle at best could be carried no further than this, that an executor may be allowed to retain the amount which he paid out of his own money, in discharging the debts due by the intestate, which had been regularly proved or allowed as the law directs. If we admit this to be the principle, before the court would allow the executor to retain, he would be required first to *471 prove the payment of the money, and.secondly, that it was paid to discharge a debt which in itself was a lien on the estate, and which he would have been justified in paying out of the money of the estate. If such a showing would be 'necessary in the orphans’ court, can we decree on any thing less? I think not, and the case before us does not show that these requisitions of the law have been observed. In reference to this part of the claim, the bill states that after the death of Gildart, his estate became indebted to complainant in a large sum of money “ for debts paid and money advanced for said estate,” whilst acting as executor. So far as this debt was created by paying the debts of the estate, the charge might be proper if the rules above mentioned had been, complied with, and perhaps the allegation in general terms as it is, would be sufficient in the bill; but the chancellor should have required proof that this money was paid in the discharge of debts which the executor was justified in paying. It certainly cannot be compatible with the powers and duties of an executor that he' should be permitted to pay debts presented to him indiscriminately out of Ms own funds and turn round on the estate for compensation. It is not allowed to him to make payments out of the funds of the estate, unless the claim is properly, authenticated; and it cannot be that the law is more lenient towards him than other creditors, and will allow him to charge the estate indirectly by first paying out of his own pocket claims which he would not be authorised to pay of the estate, and then claim to be remunerated for having thus discharged a demand which was not directly chargeable to the estate. The obligation in regard to this part of the claim is vague and uncertain, and it is not helped by the proof in chief, for there is nothing that shows' that this part of the account was created by discharging proper debts. It cannot be said either, with propriety, that we must presume that the requisite proof was made before the commissioner, for his attention was not directed to such an inquiry by the decree to take an account. The decree is by no means specific in the directions in regard to this part of the account. The commissioner is merely required to strike a balance of the receipts and expenditures of complainant on account of the estate on the first of January of *472 each year, and the principles on which that balance was to be calculated and struck were not settled by the decree. Starke claims satisfaction out of particular property, and before he can be entitled to it for debts paid, he should show affirmatively that he is so in consequence of having raised liens from the property with his own funds, by which an equity vested in him, which I do not think has been done, either by the proof in chief or the commissioner’s report.
But there is another objection to this part of the claim; part of the charge, and how much we cannot tell, is “for moneys advanced for said estate.” Now this charge appears to be too general in its terms. It cannot be that ¿n executor may make advances at pleasure for an estate, and then bind the property of that estate. He is certainly entitled to an allowance of necessary expenses in settling the estate, and in specific cases, is authorised to pay expenses out of the property, but would not be allowed any thing more than for necessary expenses. What kind of advances these were'does not appear clearly; but if we are to take, the proof exhibited as throwing any light on the subject, it would seem that some of them, at least, were for articles furnished Mrs. Gildart’s family, who had a life estate in the property, was in possession of it, and was of course liable for whatever was -furnished her.
The account which accrued after Gildart’s death, commenced in 1814, and continued open until 1822, when it ended; and it is rather surprising that an executor’s account shbu-ld be of such long continuance. Distributees and legatees are entitled to their portions after eighteen months without giving security to- refund; creditors are barred if their claims are not presented within eighteen months, and the executor is not justified in paying them; and it is difficult to perceive how advances for an estate should be necessary, especially when it was in the possession of the legatee. It is to my mind clear that no advances for an estate- can become a lien on it, unless they are such as are expressly a-uthorised by statute, or -made under the order or authority of- -the orphans’’ court. The law has pointed out the duties and powers of executors and administrators, and does not sanction encroachment,. *473 or permit a violation with impunity; and all experience teaches us that the reins should not be loosened. This part of the bill, therefore, does not go to sustain the equity of the claim.
In regard to these advances there is another objection that presents itself to my mind. By the will Mrs. Gildart had a life estate in all the property with remainder to her children. The bill charges and the answer admits, that she went into possession of the property under the will. She was, therefore, in as legatee and not as executrix, enjoying her life estate, and of course all advances made for defraying the expenses of the estate, were chargeable to her and her only. They could not operate as a lien on the property either, at least beyond her life estate in it, because the interest of the remainder man could not be made liable for what was beneficial merely to the life estate. A tenant for life cannot encumber the remainder with expenses accruing during the life estate,
If I am correct in supposing that Gildart’s account was not settled and adjudicated, and conclusive by the decree of the orphans’ court, but that it was open for investigation, the interlocutory decree was erroneous in not settling the principles on which the account for expenses and debts paid should be taken. The commissioner should have been limited, in his allowance of this part of the account, to such items as had been created for the payment of debts, which, in themselves, were a lien on the estate, and such as had been necessarily created for expenses in the settlement of the estate, or such as accrued by order of the court. For this part of the account Starke does not in reality show by his bill, an equity in himself, as an equity in him could only arise by raising liens from the estate. 'The allegations of the bill are too general in this particular.
If the interlocutory decree was erroneous,, the final decree is also erroneous in decreeing in favor of complainant for an amount to which there is nothing to show that he is equitably entitled.